## A10A1668. LANDMARK AMERICAN INSURANCE COMPANY v. KHAN.

### (705 SE2d 707)

ELLINGTON, Chief Judge.

Jamil Khan, individually and as assignee of 6420 Roswell Road, Inc., d/b/a "Flashers," filed suit against Landmark American Insurance Company, asserting, inter alia, that Landmark breached its duty to defend its insured, Flashers, in an underlying premises liability suit brought by Khan. Following a hearing, the trial court granted Khan's motion for partial summary judgment on the issue of Landmark's liability on the failure-to-defend claim and denied Landmark's motion to dismiss Khan's complaint. Landmark appeals from the trial court's order, contending that the court erred in failing to dismiss Khan's complaint and in ruling in favor of Khan as to liability because its insurance contract with Flashers barred coverage in the underlying action. For the following reasons, we disagree and affirm the trial court's ruling.

1. Landmark contends that the trial court erred in denying its motion to dismiss Khan's complaint against Landmark asserting a breach of its duty to defend Flashers in the underlying suit, arguing that, because its insurance contract with Flashers barred coverage in the underlying suit, Khan's claim must fail.

"A motion to dismiss for failure to state a claim should be sustained if the allegations of the complaint reveal, with certainty, that the plaintiff would not be entitled to relief under any state of provable facts asserted in support of the complaint." (Footnote omitted.) *LaSonde v. Chase Mtg. Co.*, 259 Ga. App. 772, 774 (1) (577 SE2d 822) (2003). "On appeal, this Court reviews the denial of a motion to dismiss de novo. However, we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in [the plaintiff's] favor." (Citations, punctuation and footnote omitted.) *Liu v. Boyd*, 294 Ga. App. 224 (668 SE2d 843) (2008).

Viewed in such light, the relevant pleadings show as follows: On the evening of November 4, 2006, Jamil Khan went to an Atlanta nightclub, Flashers, parked in the back lot, paid an entrance fee, and stayed at the club approximately 45 minutes. As Khan left the club and walked to his car, he saw two individuals exit the club behind him. As Khan got into his car, one of the individuals shot at him with a firearm, hitting him six times in the chest and back. Khan filed a premises liability suit against Flashers, alleging that Flashers had negligently failed to provide adequate security for its invitees. In addition, Khan asserted a cause of action for assault and battery, alleging that an employee or employees of Flashers either "ordered and directed the assault" on him or actually shot him six times. According to the complaint, the employee or employees were acting

as employees or agents of Flashers within the course of Flashers' business and, thus, Flashers was responsible for their actions under the doctrine of respondeat superior.

Landmark notified Flashers that it would not defend it against Khan's claims because the claims were not covered under Flashers' insurance policy. Specifically, Landmark stated that the policy only covered an assault or battery if it was committed by a Flashers employee while the employee was trying to protect persons or property.[1] According to Landmark's investigation into the shooting, the person who shot Khan did not fall within that description and, thus, the assault was not covered by the policy. The letter advised

---

[1] In relevant part, the insurance policy provided as follows:
Section I — Coverages
Coverage A[:] Bodily Injury and Property Damage Liability
1. Insuring Agreement
　　a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
2. Exclusions
This insurance does not apply to:
　　a. Expected or Intended Injury
　　"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. *This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*
(Emphasis supplied.)
　　An "Additional Insured Blanket" Endorsement modified the policy to provide as follows:
A. Section II — Who is an Insured is amended to include as an additional insured the person(s) . . . shown on the SCHEDULE, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
1. Your acts or omissions; or
2. *The acts or omissions of those acting on your behalf*;
*in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.*
(Emphasis supplied.)
　　Finally, an additional endorsement entitled "Limitation — Assault and Battery" modified the policy as follows:
　　1. Notwithstanding anything contained elsewhere in this policy to the contrary, this insurance shall not apply to "bodily injury," "property damage," or "personal and advertising injury" directly or indirectly arising from any actual or alleged "assault" and/or "battery," except as provided in 2, below.
　　2. *This insurance shall apply to "bodily injury," "property damage," or "personal and advertising injury" arising from actual or alleged "assault" and/or "battery" committed by you or your "employees" to protect persons and/or property.* . . .
　　3. For purposes of this endorsement, the following definitions shall apply:
　　"Assault" means the apprehension of harmful or offensive contact between or among two or more persons by threat through words or deeds.
　　"Battery" means the harmful or offensive contact between or among two or more persons.
(Emphasis supplied.)

Flashers that, "[s]ince there is no coverage for this claim under your policy, [Landmark] will not defend or indemnify you with regard to this matter. You should take immediate steps, at your own expense, to protect your interests in this matter."

The trial court ultimately entered an order striking Flashers' answer, entering a default judgment, and awarding Khan over $2.3 million on his complaint. In exchange for Khan's promise not to execute the judgment against Flashers' assets, Flashers assigned to Khan all of its causes of action against Landmark which arose out of the November 2006 shooting incident, including claims based upon Landmark's failure to defend Flashers in the Khan lawsuit and its failure to provide insurance coverage to Flashers.

Khan then filed the instant complaint against Landmark, asserting claims for the breach of its duty to defend, bad faith refusal to defend or settle under OCGA § 33-4-6,[2] and breach of contract. Landmark filed a motion to dismiss the complaint, and Khan moved for partial summary judgment as to Landmark's liability on his claim for breach of the duty to defend. In a comprehensive order, the trial court found that Landmark had breached its duty to defend Flashers in the underlying suit, and it denied Landmark's motion to dismiss and granted Khan's motion for partial summary judgment on the issue of Landmark's liability on his claim for breach of the duty to defend.

As noted above, on appeal, Landmark contends that the trial court should have dismissed Khan's claim for breach of its duty to defend, because its insurance contract with Flashers barred coverage in the underlying action. Specifically, Landmark argues that, because Khan's underlying personal injury claim against Flashers did not specifically allege that the assault and/or battery was committed by Flashers' employees *while they were protecting persons and/or property*, the acts were not covered by the insurance policy.

The controlling issue is whether the insurance policy covers either of the claims asserted by Khan in his underlying complaint: assault and battery by Flashers' employees or premises liability based upon Flashers' negligence in failing to provide adequate security. "An insurer's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy."

---

[2] OCGA § 33-4-6 (a) provides, in relevant part, as follows:

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer. . . .

(Punctuation and footnote omitted.) *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371 (599 SE2d 220) (2004).

> Construction and interpretation of [an insurance] contract are matters of law for the court. . . . If the court finds that an ambiguity exists, it is the court's duty to resolve that ambiguity by applying the pertinent rules of contract construction. The rules of construction require the court to consider the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other. In addition, it is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless. Finally, any ambiguities in the contract are strictly construed against the insurer as drafter of the document, *any exclusion from coverage sought to be invoked by the insurer is* likewise *strictly construed*, and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible.

(Punctuation and footnotes omitted; emphasis in original.) *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 576 (2) (649 SE2d 740) (2007).

Moreover, "complaints and other pleadings should be construed as to do substantial justice, that is, liberally in favor of the pleader." (Citations omitted.) *Dudley v. Wachovia Bank*, 290 Ga. App. 220, 225 (2) (659 SE2d 658) (2008). Thus,

> [i]f the facts as alleged in the complaint *even arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. Indeed, to excuse the duty to defend the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. *Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured.*

(Citation, punctuation and footnote omitted; emphasis supplied.) *BBL-McCarthy v. Baldwin Paving Co.*, 285 Ga. App. 494, 497-498 (1) (a) (646 SE2d 682) (2007). See also *Penn-America Ins. Co. v. Disabled American Veterans*, 268 Ga. 564, 565 (490 SE2d 374) (1997) ("[T]he insurer is obligated to defend where . . . the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage."); *Driskell v. Empire Fire &c. Ins. Co.*, 249 Ga. App. 56, 61 (3) (547 SE2d 360) (2001) (Because an

insurance contract obligates the insurer to defend any claim *asserting* liability under the policy, "the allegations of the complaint against the insured are looked to to determine whether a liability covered by the policy is *asserted*," even if such allegations appear to be "groundless.") (punctuation and footnote omitted; emphasis supplied).

As shown above, the policy at issue here expressly excludes bodily injury claims "directly or indirectly arising from any actual or alleged 'assault' and/or 'battery' " unless the assault and/or battery was committed by the named insured or a Flashers employee, employees, or agent while trying to protect persons and/or property. Because the exclusion's use of the phrase "arising from" focuses on the origin of the claims (the assault and/or battery),[3] Khan's claim for damages from the assault and battery, as well as the premises liability (negligence) claim that would not have arisen *but for* the alleged assault and battery, are not covered by the policy, unless the assault and/or battery was committed by a Flashers employee, employees, or agent while trying to protect persons and/or property.

In the underlying complaint, Khan asserted that Flashers' employee or employees either shot him six times or ordered someone else to shoot him, that the assailants were either employees or agents of Flashers at the time of the shooting, and that Flashers "is responsible for the intentional or negligent acts and omissions of its employees or agents made within the course of its business under the established doctrine of respondeat superior."

In denying Landmark's motion to dismiss, the trial court ruled that

> [Khan's] allegation that the [Flashers] employee was acting within [the] scope of employment was sufficient to trigger [Landmark's] duty to defend. It is possible that the employee was protecting persons or property while committing the assault and battery on [Khan]. . . . [Khan] was not required to list every duty and job responsibility of an employee in the underlying complaint. Further, [Khan] was not required to adopt the exact language of Flashers' insurance policy in drafting the underlying complaint in order to trigger [Landmark's] duty to defend.[4] . . . The

---

[3] See *Pilz v. Monticello Ins. Co.*, 267 Ga. App. at 373 (concluding that, because the insurance policy excluded claims "arising out of" an assault and battery, and because that exclusion focuses on the origin of the claims, the plaintiffs' claims for damages from the assault and battery, as well as the negligence claims that would not have arisen but for the alleged assault and battery, were not covered by the policy).

[4] On the issue of whether it was possible that an employee was protecting persons and property when he committed the assault and battery, the trial court also speculated that, "[i]t is more likely probable when considering that the employees of Flashers are charged with

incompleteness or ambiguity in the allegations does not exclude the circumstance where the employees were acting to protect persons and/or property.

Thus, the trial court concluded that the "allegations of the Complaint do not reveal, with certainty, that [Khan] would not be entitled to relief under any state of provable facts asserted in support of the Complaint."

In contending that the court erred in so ruling, Landmark cites to several cases to support its claim that the assault and battery exclusion applies if the claimant's injury "arose from" an assault and battery, *no matter who was the actor or what was the theory of liability*. The cases upon which Landmark relies do not support its arguments and are clearly distinguishable from the instant case, therefore, because the policy in each cited case excluded coverage for *any* claim for bodily injury arising out of *any* assault and/or battery, regardless of who committed the assault and/or battery. See *ALEA London Ltd. v. Woodcock*, 286 Ga. App. at 578 (2) (rejecting a similar argument by the appellants for the same reason).

In addition, Landmark complains that the trial court's order "eviscerates the intended effect of the Assault and Battery Exclusion Endorsement" by requiring Landmark to assume, when determining whether it has a duty to defend an insured, "that an employee must have been acting to protect persons and/or property if a plaintiff alleges that [the] employer is vicariously liable[,]" thereby rendering the exception to the policy exclusion "meaningless." But the trial court's order does not require Landmark to "assume" anything. As the trial court pointed out, if Landmark was uncertain whether the language of Khan's complaint triggered its duty to defend, it "could have defended the case under a reservation of rights, requested a stay of the underlying case, and filed a declaratory action to determine its obligation to provide a defense." It is Landmark's failure to exercise this reasonable option, not the trial court's ruling in this case, that has placed Landmark in its present position.

Accordingly, the trial court properly concluded that the allegations of Khan's personal injury complaint against Flashers, viewed in Khan's favor, were sufficient to assert a claim against Flashers

---

protecting persons and property as the primary component of their job responsibilities." Although this statement is not supported by facts alleged in the complaint, it is superfluous to the court's ultimate conclusion — that the facts as alleged in the complaint were sufficient to assert a claim that was within the insurance policy's coverage, triggering Landmark's duty to defend.

that, at least arguably, would have been covered by the provision in the insurance policy that provided coverage for an assault and/or battery by a Flashers employee or employees that was committed to protect persons and/or property. Therefore, Landmark had a duty to defend Flashers in the underlying suit, and the trial court properly denied its motion to dismiss the instant complaint.[5]

2. Landmark argues that the trial court erred in granting Khan's motion for partial summary judgment as to liability on Khan's claims for breach of the duty to defend and breach of contract. Landmark contends that the trial court assumed facts not in evidence and failed to view the facts in favor of Landmark when ruling on the summary judgment motion.[6] It also argues that the grant of partial summary judgment on the breach of contract claim was improper.

(a) The first issue lacks merit, because the grant of Khan's partial summary judgment motion on the failure-to-defend claim was a natural and logical extension of the trial court's denial of Landmark's motion to dismiss that claim. In other words, the trial court properly found as a matter of law that the allegations of Khan's underlying complaint were sufficient to trigger Landmark's duty to defend Flashers in that suit, there was no evidence of any circumstance that might have relieved Landmark of such duty, and it is undisputed that Landmark did, in fact, fail to defend Flashers. Given these facts, the trial court properly granted partial summary judgment to Khan as to Landmark's liability for breaching its duty to defend.

(b) Further, contrary to Landmark's contentions, the trial court's order clearly shows that it did not grant summary judgment to Khan on his claim for breach of contract. The issue of whether Landmark breached a contractual obligation to Flashers requiring it to pay Khan the policy limit under the insurance policy remains pending below for jury consideration.[7] Accordingly, this argument demonstrates no error.

*Judgment affirmed. Andrews and Doyle, JJ., concur.*

---

[5] Landmark also contends that, if it had no duty to defend Flashers in the underlying complaint, then Khan's bad faith claim under OCGA § 33-4-6 must fail as a matter of law. Because we have rejected the contingency upon which this alleged error is based, it lacks merit. Further, the record shows that the trial court did not grant Khan partial summary judgment on the bad faith count, so the claim remains pending for jury resolution.

[6] "Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004).

[7] In addition, the jury will determine the amount of damages resulting from Landmark's breach of its duty to defend and, as noted in footnote 5, supra, whether Landmark acted in bad faith so as to trigger the provisions of OCGA § 33-4-6.

DECIDED JANUARY 25, 2011 —

*Fields, Howell, Athans & McLaughlin, Michael J. Athans, Jeffrey A. Kershaw*, for appellant.
*Glenn A. Loewenthal*, for appellee.